# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- | ) |
| | ) |
| Carol D. Jones | ) ASBCA No. 61080 |
| | ) |
| Under Contract No. DACA-31-5-13-0103 | ) |

APPEARANCE FOR THE APPELLANT:  Ms. Carol D. Jones

APPEARANCES FOR THE GOVERNMENT: Thomas H. Gourlay, Jr., Esq.
                Engineer Chief Trial Attorney
                Elizabeth A. Hoefer, Esq.
                Engineer Trial Attorney
                U.S. Army Engineer District, Baltimore

## OPINION BY ADMINISTRATIVE JUDGE SWEET

  Carol D. Jones brings this action seeking to recover for damage to a house she leased to the government. Ms. Jones elected to use the Board's expedited procedure pursuant to Board Rule 12.2.[1] Pursuant to Board Rule 11, the parties elected to waive a hearing and to submit the appeal on the record before the Board. Ms. Jones is entitled to some compensation, but not the full amount that she seeks.

## FINDINGS OF FACT

  1. On 13 December 2012, Ms. Jones and the government entered into Lease No. DACA-31-5-13-0103 (lease) (R4, tab 2). Under the lease, Mr. Jones leased a single-family residence located in Voorhees, New Jersey (house) to the government in exchange for $2,000 a month (*id.* at 1-2). The term of the lease was for one year from 14 December 2012 through 13 December 2013, with the option to renew the lease under the same terms and conditions (*id.* at 1).

  2. The lease required Ms. Jones and the government to conduct a joint initial condition report reflecting the condition of the house at the time of the inspection (R4, tab 2 at 4). The lease also stated that, "[t]he Government shall be liable only for

---

[1] The Contract Disputes Act (CDA), 41 U.S.C. §§ 7101-09, implemented by Board Rule 12.2, provides that this decision will have no value as precedent, and, in the absence of fraud, shall be final and conclusive and may not be appealed or set aside.

damages resulting from negligence or misconduct of the Occupant or Government personnel" (*id.* at 5). Further, the lease stated that:

> A. Upon vacating the premises, a final joint inspection and condition report shall be conducted. Upon written notice, the lessor may require restoration of the demised premises, when damage beyond normal wear and tear exists. The referenced notice shall be delivered to the Government prior to the termination of this lease.
>
> B. The Government shall not restore either physically or by payment in lieu thereof: 1) reasonable and ordinary wear and tear...or 4) the interior paint of the demised premises, when the Government has possessed the leased premises for three or more years prior to the date of termination.
>
> C. In the event restoration is warranted, the Government shall pay to the Lessors a sum of money depreciated for normal wear and tear representing a value of either the diminution in the fair market value of the property due to the failure to restore, or the actual cost of restoration, whichever is the lesser amount.

(*Id.* at 6)

3. Ms. Jones and the government conducted an initial survey on 14 November 2012, and the lease commenced on 14 December 2012 (R4, tab 3 at 1).

4. Photographs show damage to the house during the lease. First, the tenant painted the living room, dining room, hallway, kitchen, and sun-room. (R4, tab 11 at 49-53) Second, the tenant affixed sports stickers to the walls, which required repainting (*id.* at 58). Third, there was damage to french doors, which appear to have been caused by a dog gnawing on the doors (*id.* at 54-55). Fourth, the garbage disposal was jammed with something that appears to be glass or metal (*id.* at 57). Fifth, there was a gritty substance in the washing machine (*id.* at 60, 62). Sixth, Ms. Jones claims that the microwave oven was not working at the end of the lease (*id.* at 3).

5. On 12 October 2016, the Army Corps of Engineers (Corps) sent Ms. Jones a notice that the government would terminate the lease effective 12 November 2016 (R4, tab 4 at 1).

6. On 28 October 2016, Ms. Jones and the government conducted an exit survey (R4, tab 3 at 1). Both parties signed the exit survey, which stated that "[w]e,

the undersigned, jointly made a survey and inspection of the condition of the property mentioned above. We agree that as of the date of survey, the condition of the property is as described herein." (*Id.*) The exit survey rated various aspects of each room on a scale of good, fair, or poor (*id.* at 2-11). There also was a space for comments (*id.*). The below table compares the ratings on the initial survey and exit survey, and describes the comments on the exit survey, for relevant items:

| Item | Initial Survey | Exit Survey | Exit Survey Comment |
|---|---|---|---|
| Living Room Paint | Good | Fair | None |
| Dining Room Paint | Good | Fair | None |
| Kitchen Paint | Good | Good | None |
| Kitchen Wallpaper | Good | Good | None |
| Disposal | Good | Poor | Does not work |
| Microwave | Good | Poor | Does not work |

(R4, tab 3 at 2-4, 8-10) There was no survey for the sun-room or hallway (*id.*).

7. On 28 October 2016, Mr. Jones signed a release (R4, tab 6 at 1). The release stated that:

> Upon lease termination there were no restoration costs other [than] reasonable and ordinary wear and tear. I hereby release and forever discharge the Government, its officers, agents, and employees, from all claims for damages or for the restoration, and from all liability that may arise out of said lease and the occupation by the Government of the property (except any unpaid rent due).

(*Id.*)

8. On 12 November 2016—more than three years after the tenant took possession—the government terminated the lease (R4, tab 4 at 1).

9. On 17 November 2016, Ms. Jones and her husband sent an email to the Corps requesting compensation for cleaning, painting, damaged appliances, and stained carpets (R4, tab 7 at 1).

10. On 26 December 2016, Mr. Jones filed a claim for $6,956.35 with the contracting officer (CO) for restoration costs related to cleaning, painting, damaged appliances, and miscellaneous items (R4, tab 10). That claim did not mention any damage to the french doors as a result of a dog (*id.*).

3

11. On 6 February, 2017, the CO issued a final decision, granting Ms. Jones' claim in part, and denying it in part (R4, tab 11 at 18-25). In particular, the CO found that, "[t]he Release and Inspection Report signed by [Ms. Jones] are presumptively valid" (*id.* at 23). The CO continued that "[n]otwithstanding the above presumption that the Release is valid, I have evaluated all of the evidence submitted by claimant in support of her claim, particularly the photographic evidence" (*id.*). The CO found that Ms. Jones was entitled to $1,346.65 for restoration costs related to cleaning and some miscellaneous items (*id.* at 23-24). However, the CO found that the lease precluded recovery for painting (*id.*). Moreover, the CO found that there was no evidence that the tenant caused the damage to the appliances, and that appliance damage typically constitutes normal wear and tear (*id.*). The CO ignored the lease clause requiring written notice (*id.* at 18-25).

12. This appeal followed. In the notice of appeal, Ms. Jones seeks, *inter alia*, to recover her restoration costs related to painting, damaged walls due to stickers, damaged appliances, and damaged french doors. Ms. Jones' restoration costs are as follows:

| Item | Restoration Costs |
|---|---|
| Painting | $3,900.00 |
| Wall damage | $400.00 |
| Washing machine damage | $497.70 |
| Garbage disposal damage | $339.00 |
| Microwave oven damage | $148.00 |
| French Doors damage | $1,137.09 |

(App. reply br. 2, 4; R4, tab 11 at 8, 13-15)

## DECISION

Ms. Jones is entitled to some, but not all, of the damages she seeks.[2]

*I. Jurisdiction*

The Board does not possess jurisdiction over Ms. Jones' $1,137.09 claim regarding the french doors. The Board does not possess jurisdiction to entertain a claim unless it was presented to the CO. *Monica Walker*, ASBCA No. 60436, 16-1 BCA ¶ 36,452 at 177,656. A claim is a new claim that was not presented to the CO if it is not based upon a common or related set of operative facts. *Id.* (holding that a claim for painting costs was a new claim

---

[2] Ms. Jones also seeks $75 for a broken door handle, and $250 for door locks (app. reply br. at 4). She fails to even address those items in her brief, let alone establish that she incurred those restoration costs as a result of damage beyond normal wear and tear (*id.*). Therefore, her appeal as to those costs is denied.

4

because, while appellant submitted to the CO a claim for damage to her house, that claim did not address painting in particular).

Here, as in *Monica Walker*, while Ms. Jones' claim to the CO sought compensation for damage to her house generally, she did not address dog damage to the french doors in particular (finding 10). Therefore, the french doors claim is not based upon a common or related set of operative facts, so it is a new claim. As a result, the Board does not possess jurisdiction over the french doors claim.

*II. Release*

The release does not bar Ms. Jones' claim. "Generally, a contractor who executes a general release is thereafter barred from claiming additional compensation under the contract based upon events that occurred prior to the execution of the release." *Vic Lane Constr., Inc.*, ASBCA No. 30305, 85-2 BCA ¶ 18,156, at 91,145; *see also J.G. Watts Constr. Co. v. United States*, 161 Ct. Cl. 801, 806-07 (1963). Nevertheless, a claim may be prosecuted despite the existence of a general release when there was mutual mistake, fraud, duress, or "the conduct of the parties in continuing to consider a claim after the execution of the release makes plain that they never construed the release as constituting an abandonment of the claim." *Id.* at 807; *see also Winn-Senter Constr. Co. v. United States*, 110 Ct. Cl. 34, 65-66 (1948). Thus, "[w]hen the parties ignore the release, the Board will not consider it to bar the claim at issue." *Robert McMullan & Son, Inc.*, ASBCA No. 15730, 71-2 BCA ¶ 9105 at 42,197; *see also Community Heating & Plumbing, Co. v. Kelso*, 987 F.2d 1575, 1581 (Fed. Cir. 1993).

Here, Ms. Jones executed a general release (finding 7). However, the CO continued to consider Ms. Jones claim after the execution of the release, which made plain that the government did not construe the release as constituting an abandonment of the claim (finding 11). Because the parties ignored the release, the Board does not consider it a bar to the claim at issue.[3]

*III. Merits*

In addition to the $1,346.65 to which the CO found Ms. Jones was entitled, she is entitled to $836.70 in restoration costs for damage to the garbage disposal and the washing machine. Under the lease, it is the government's responsibility to pay for restoration beyond normal wear and tear (finding 2). Here, the $339.00 in damage to the garbage disposal was caused by the insertion of a hard object, which is the fault of the tenant and not normal wear and tear (finding 4). Likewise the $497.70 in damage

---

[3] Likewise, while the lease required Ms. Jones to submit a written notice of damage before the termination of the lease (finding 2), the parties ignored that clause (finding 11). In any event, Ms. Jones provided written notice of appliance damage in the exit survey (finding 6).

5

to the washing machine cause by the persistent presence of a gritty substance is not the result of normal wear and tear (*id.*).[4]

However, Ms. Jones is not entitled to $4,448 in restoration costs for painting, sticker damage to walls, and damage to the microwave oven. Ms. Jones is not entitled to the $3,900.00 in restoration costs for painting. Where a lease states that the government is not liable for the cost of painting if a tenant occupies a house for three years, and the tenant occupies the house for three years, an appellant may not recover for the cost of painting. *Monica Walker*, 16-1 BCA ¶ 36,452 at 177,656-57. Here, the lease expressly provided that the government shall not pay for restoration of interior paint when the government has possessed the lease premises for three or more years (finding 2). Moreover, the government possessed the property for more than three years (finding 8). Therefore, the government is not required to pay for the restoration of interior paint.

Likewise, Ms. Jones is not entitled to $400 for restoration of sticker damage to the walls because that restoration involved painting (finding 4). As discussed above, the lease precluded recovery for such painting (finding 2).

Finally, Ms. Jones is not entitled to the $148.00 in restoration costs for damage to the microwave oven. As Ms. Jones concedes, there is no evidence that the tenant caused the damage to the microwave oven, or that such damage was beyond normal wear and tear. *Monica Walker*, 16-1 BCA ¶ 36,452 at 177,660.

## CONCLUSION

In addition to the $1,346.65 found by the CO, Ms. Jones' appeal is sustained in the additional amount of $836.70, with CDA interest to run from 26 December 2016, the date Ms. Jones' claim was submitted to the CO. This figure represents $497.70 for costs related to the washing machine and $339.00 for costs related to the garbage disposal. The remainder of the appeal is denied.

Dated: 8 May 2017

*James R. Sweet*

JAMES R. SWEET
Administrative Judge
Armed Services Board
of Contract Appeals

---

[4] The government does not take issue with Ms. Jones' damages calculation.

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 61080, Appeal of Carol D. Jones, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals